## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MINNESOTA

_____

Kimball Area Public Schools,
Independent School District No. 739,        Civil File No. 23-CV-02637 (NEB/LIB)

       Plaintiff,

vs.                                         **DEFENDANTS' ANSWER AND
                                            COUNTER CLAIMS**

I.R.M by and through his Parent,
L.M.,
                                            **Jury Trial Requested**

       Defendants.
_____

Defendants I.R.M. ("Student") and L.M. ("Parent") as and for their Answer to Plaintiff

Kimball Area Public School's (the "District") Complaint and Appeal, state as follows:

1.  Unless otherwise admitted, qualified, or explained, the Parent denies each and every
    allegation, statement, or matter contained in the Complaint.

2.  The Parent admits Paragraph 1 of the Complaint.

3.  The Parent admits Paragraph 2 of the Complaint.

4.  Regarding Paragraph 3, the Parent admits only that the District is a public school district
    in the city of Kimball in Stearns County, Minnesota and that the District is comprised of
    one elementary school and one combined middle and high school.  The Parent is without
    sufficient knowledge to admit or deny the number of students the District serves, and
    therefore denies that the District serves approximately 750 students.

5.  The Parent admits Paragraph 4 of the Complaint.

6.  The Parent admits Paragraph 5 of the Complaint.

7.  The Parent admits Paragraph 6 of the Complaint.

8.  The Parent admits Paragraph 7 of the Complaint.

9.  The Parent admits Paragraph 8 of the Complaint to the extent that it recites information from the District's evaluations.

10. The Parent admits Paragraph 9 of the Complaint.

11. Regarding Paragraph 10, the Parent admits only that District staff observed Student engage in increasing injurious behavior directed towards others during the 2022-2023 school year.  The Parent affirmatively alleges that the Student's biting and pinching behaviors can be caused by many factors, including failure to utilize interventions in the Student's Individualized Education Program ("IEP).  The Parent attended school with the Student for seven months.  The Parent observed that the Student's biting and pinching behaviors increased when District staff interfered with his access to his Autism Assistance Dog ("AAD") and reinforced the Student's negative behaviors.

12. The Parent admits Paragraph 11 of the Complaint.

13. The Parent admits Paragraph 12 of the Complaint.

14. Regarding Paragraph 13, the Parent admits only that the District conducted a re-evaluation of the Student in late 2022.  The Parent denies that the re-evaluation was comprehensive and denies that the Student's disabilities are in the severe/profound range. The Parent affirmatively alleges that the Student's cognitive disability is in the moderate range.

15. The Parent admits Paragraph 14 of the Complaint.

16. Regarding paragraph 15, the Parent no longer attends school with the Student.  She is without knowledge regarding whether the Student receives support from a one-on-one

paraprofessional during all times he is at school.  The Parent therefore denies this allegation.

17. Regarding paragraph 16, the Parent no longer attends school with the Student.  She is without knowledge regarding the paraprofessional support the District provides to the Student.  The Parent therefore denies Paragraph 16.  The Parent furthermore affirmatively alleges that when she attended school with the Student, the District did not provide consistent paraprofessional support for the Student in these areas.

18. The Parent admits Paragraph 17.

19. The Parent admits Paragraph 18.  The Parent furthermore affirmatively alleges that the AAD also auto-responds to mitigate the Student's disabilities.

20. The Parent admits Paragraph 19.

21. Regarding Paragraph 20, the Parent admits that the elementary principal e-mailed the Parent on August 9, 2022 regarding the Student's Autism Assistance Dog AAD at school and that the District had concerns that needed to be addressed prior to the AAD attending school.  The Parent is without knowledge regarding why the District was concerned about the AAD attending school, and therefore denies the remainder of Paragraph 20.

22. Paragraph 21 is a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, the Parent denies Paragraph 21.

23. The Parent admits that the allegations in Paragraph 22 are an accurate recitation of District Policy 535.  The Parent denies that District Policy 535 is consistent with the ADA.

24. Regarding Paragraph 23, the Parent denies that the AAD requires care and supervision during the school day.  The Parents admits that the Student requires adult assistance to receive support from his AAD.

25. The Parent denies paragraph 24.  The Parent instead affirmatively alleges that Student can be tethered to his AAD by a belt attached around his waist that connects to a cape attached to the AAD's back and torso area.  The Student also holds a handle during transitions that is connected to the cape. The AAD's collar is separately connected to a leash held or worn by an adult.  The Parent denies that an adult must always be within arms-reach of the Student.

26. The Parent denies paragraph 25.  The Parent instead affirmatively alleges that the Student does not need adult assistance to direct his AAD while moving because the AAD does not need directions while moving.   The Parent denies that the Student needs frequent verbal cues from adults to access support from his AAD.  The Parent denies that the AAD needs to use the restroom while at school.  The Parent denies that the AAD needs multiple verbal directives to respond to the Student's escalating behavior.

27. The Parent admits Paragraph 26.

28. Regarding Paragraph 27, the Parent admits that she requested the following three tasks from the District:

- Hold the AAD's leash while the Student is transitioning throughout the school day.

- Tether and untether the AAD when necessary (ex. toileting, transportation).

- Prompt the Student to cue the AAD with commands when appropriate, such as 'walk on' or 'kisses.'

4

The Parent denies that she requested the following tasks from the District:

- Cue Student's AAD to leave food alone and provide the AAD with reinforcement for not eating Student's and other students' food.

- Cue the AAD to sit or lay next to Student in the classroom.

- Call Student's AAD to Student if Student has eloped from the classroom when Student was not tethered.

- Cue the AAD to go to its kennel during the school day, and open and close the kennel door.

- Oversee and supervise the AAD while Student participates in physical education class and recess, times during which Student is not tethered to his AAD.

29. Regarding Paragraph 28, the Parent denies that the Student requires "extensive support" to utilize his AAD.  The Parent admits the District notified the Parent on October 19, 2022 that District staff would not serve as handlers for the Student's AAD.  Whether the ADA requires the District to provide handling support for the AAD is a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, the Parent denies this allegation.

30. The Parent denies Paragraph 29.  The Parent instead affirmatively alleges that she began attending school with the Student to allow him access to his AAD and to support the Student's use of his AAD.

31. The Parent denies Paragraph 30.  The Parent affirmatively alleges that portraying her as "disruptive" is retaliation against the Parent for seeking to protect the Student's rights under the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA").

32. The Parent denies Paragraph 31.  The Parent affirmatively alleges that portraying the AAD as "disruptive" is retaliation against the Parent and Student for seeking to protect the Student's rights under the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA").

33. The Parent denies Paragraph 32.  The Parent affirmatively alleges that the Student's negative behaviors substantially decreased after his AAD began attending school with him.  The Parent furthermore affirmatively alleges that any increased aggressive behaviors towards staff are due to District staff interfering with his access to his AAD and reinforcing his negative behaviors.

34. The Parent admits Paragraph 33.

35. Regarding Paragraph 34, the Parent is without knowledge regarding the District's understanding of the October 17, 2022 meeting regarding the AAD.  The Parent therefore denies Paragraph 34.  The Parent furthermore affirmatively alleges that she did not outline the tasks during October 17, 2022 meeting.  The Parent requested the three accommodations above in Paragraph 28.  The Student does not require an extensive level of support to access AAD, and his AAD does not require care and supervision while at school.

36. Regarding Paragraph 35, the Parent admits that there were two IEP team meetings on November 15 and November 18, 2022.  The Parent denies that she requested the meeting. The Parent instead affirmatively alleges that the District requested these two meetings to discuss issues largely unrelated to the Student's AAD.  The Parent admits that on November 22, 2022 the District sent her a Prior Written Notice ("PWN") stating it would not provide staff support for the Student's AAD.

37. Regarding Paragraph 36, the Parent admits that the District's decision to deny Parent's request was based on its conclusion that Student's AAD was not necessary to provide Student with a free appropriate public education ("FAPE"). Despite the District's statement, the Parent denies that the District conducted a FAPE analysis regarding the Student's AAD. The Parent denies that the District concluded that the Student's one-on-one paraprofessional can provide sufficient support for Student to receive a FAPE in the District, without Student accessing his AAD during the school day. Whether requiring District staff to serve as handler of Student's AAD would violate Minnesota's Restrictive Procedures statute, Minnesota Statutes Section 125A.0942, is a legal conclusion to which no responsive pleading is required. To the extent a responsive pleading is required, the Parent affirmatively alleges that District staff support for the Student's AAD does not violate Minnesota Statutes Section 125A.0942. The Parent is without knowledge regarding whether the District considered the monetary cost of a District staff member serving as handler of Student's AAD and therefore denies this allegation.

38. The Parent admits Paragraph 37.

39. Regarding Paragraph 38, the Parent denies that she requested that the District provide a "handler" for the Student's AAD in her December 16, 2022 Due Process Complaint. The Parent instead affirmatively alleges that she sought "staff support" to assist the Student in utilizing his AAD at school. The Parent admits the remainder of Paragraph 38.

40. Regarding Paragraph 39, the Parent admits she attended school with the Student and the AAD from October 24, 2022 to early March, 2023. The Parent denies that her behavior in the classroom was disruptive. The Parent affirmatively alleges that portraying her as "disruptive" is retaliation against the Parent for seeking to protect the Student's rights

under the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA"). The Parent denies that the Student is distracted by his AAD. The Parent denies that the Student's AAD provides no benefit to him not already provided by District paraprofessionals. The Parent denies that she prohibited District staff from working appropriately with the Student.

41. Regarding Paragraph 40, the Parent admits the IEP team met on January 12 and 23, 2023. The Parent denies that the revisions the District proposed were largely based on the Student's recent re-evaluation which was completed on January 3, 2023. The Parent affirmatively alleges that the District created the revisions for purposes of litigation.

42. The Parent admits Paragraph 41.

43. The Parent admits Paragraph 42.

44. Regarding Paragraph 43, the Parent admits the District proposed that the Student attend a full day of school. The Parent denies that full days of school are necessary to provide the Student with a free, appropriate public education ("FAPE"). The Parent admits that time with non-disabled peers is important for the Student to practice his social and communication skills.

45. The Parent admits Paragraph 44.

46. The Parent denies Paragraph 45. The Parent affirmatively alleges that District only stated in its February 3, 2023 PWN that it "is agreeable to engaging in a conversation" about ABA therapy at school. The District did not state it was "open" to the Student receiving ABA therapy at the District during school hours.

47. Regarding Paragraph 46, the Parent denies that the District's proposed Positive Behavior Support Plan ("PBSP") provides the Student with FAPE.  The Parent denies the remainder of Paragraph 46.

48. The Parent admits Paragraph 47.

49. Paragraph 48 is a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, the Parent denies Paragraph 48.  Furthermore, the Parent affirmatively alleges that the District's proposed IEP is not reasonably calculated to enable the Student to make appropriate progress in light of his needs and does not provide the Student with FAPE.

50. Paragraph 49 is a legal conclusion to which no responsive pleading is required.  To the extent a responsive pleading is required, the Parent denies Paragraph 49.  Furthermore, the Parent affirmatively alleges that the Student's AAD is necessary for the Student to receive FAPE at school.

51. Regarding Paragraph 50, the Parent admits she returned her written objection to the January 12, 2023 IEP and requested a conciliation conference.  The Parent denies she later told District administration that she did not see a reason to meet for a conciliation conference at this time.  The Parent told the District principal that she was open to a meeting, and the District principal did not provide a response regarding scheduling a meeting.

52. The Parent admits Paragraph 51.

53. The Parent denies Paragraph 52.  The Parent affirmatively alleges that her legal counsel informed the District's legal counsel that the Student would be homeschooled, due to the

increasingly hostile environment at school, until the ALJ issued a decision, not until the ALJ granted her requested relief.

54. Paragraph 53 contains legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is required, the Parent admits the District brought a motion to dismiss the Parent's Due Process Complaint and admits that the ALJ entered an Order for Dismissal of OAH Docket No. 60-1300-38905 on March 9, 2023.

55. The Parent denies Paragraph 54.

56. The Parent admits Paragraph 55.

57. The Parent denies Paragraph 56.  The Parent affirmatively alleges that the Parent's legal counsel sent the District's legal counsel an email on March 15, 2023 requesting that the Student's IEP be amended to include staff support for him to access his AAD as a related service.  The Parent's legal counsel did not request that the District amend the Student's IEP to include the Student's AAD as a "related service" or have District staff serve as a "handler" for the AAD.

58. The parent admits Paragraph 57.

59. Regarding Paragraph 58, the Parent admits she filed a second Due Process Complaint on March 23, 2023.  The Parent denies that she asserted that the District is required to provide a "handler" for the Student's AAD as a related service under 34 C.F.R. § 300.34.  The Parent instead affirmatively alleges that she asserted that the District is required to provide "staff support for the Student to access his AAD" in her second Due Process Complaint.  The Parent admits the remainder of Paragraph 58.

60. The Parent admits Paragraphs 59, 60, 61, 62, 63, 64, and 65.

61. The Parent denies Paragraph 66.  The Parent denies that the ALJ "directed" the District to implement, "if it sees fit," the "other features of the proposed January 12, 2023 IEP as written."  The Parent instead affirmatively alleges that the ALJ stated that the District "may, if it sees fit, implement the other features of the proposed January 12, 2023 IEP as written."

62. The Parent denies Paragraph 67.  The Parent instead affirmatively alleges that the District has not implemented the requirements of the ALJ's June 30, 3023 Order into the Student's IEP.  Despite a request from the Parent's counsel to the District's counsel, the current IEP does not list "AAD handling services" on the IEP's related services grid.

63. The Parent admits Paragraph 68.

64. The Parent denies Paragraphs 69 – 87.

65. The Parent denies that the District is entitled to the relief sought in its Complaint.

## AFFIRMATIVE DEFENSES

66. The Complaint fails to state a claim upon which relief may be granted.

67. The District has failed to plead factual allegations that plausibly support its claims.

68. The ALJ applied the correct legal standards during the administrative hearing and in the ALJ's Order.

69. The ALJ demonstrated no bias during the administrative hearing and in the ALJ's Order.

70. The factual findings in the ALJ's Order are not contrary to the evidence in the record and are not contrary to law.

71. The conclusions of law in the ALJ's Order are not contrary to the evidence in the record and are not contrary to law.

72. The ALJ's Order did not exceed the ALJ's jurisdiction.

73. The ALJ's Order does not violate Minnesota Statutes § 125A.0942.  The Student's use of his AAD in school does not constitute a "physical holding."

74. Pursuant to Minnesota Statute § 125A.091, subd. 16, the District had the burden of proof at the administrative hearing to prove that its proposed IEP provided FAPE to the Student.

75. At the administrative hearing the ALJ made multiple evidentiary decisions in favor of the District, in favor of the Parent, adverse to the District, and adverse to the Parent. However, both the Parent and the District received an impartial Due Process hearing as required by Minnesota Statute § 125A.091, subd. 12.

76. The ALJ gave appropriate weight to the testimony of licensed educators regarding educational matters in the ALJ's Order.

77. At the administrative hearing, the Parent proved by a preponderance of the evidence that staff support for the Student to access his AAD is necessary for FAPE.

78. At the administrative hearing, the District failed to prove by a preponderance of the evidence that the full day in its proposed IEP provides FAPE to the Student.

79. The District unreasonably protracted and continues to unreasonably protract final resolution of these proceedings through pursuit of claims without merit.

80. The Parent reserves any other affirmative defense available to her upon discovery under the applicable laws or Rules of Civil Procedure.

**WHEREFORE,** the Parent and Student request relief from the Court as follows:

1. Dismissing the District's Complaint and Appeal with prejudice and without any relief;

2. Affirming in its entirety the administrative hearing decision dated June 30, 2023;

3. Awarding the Parent and Student their costs, disbursements and attorneys' fees related to this action pursuant to 20 U.S.C. § 1415(i)(3)(B)(i); and

4. Such other relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED,

AUTISM ADVOCACY & LAW CENTER, LLC

Date: <u>October 17, 2023</u>     <u>/s/ Jason Schellack</u>
Jason Schellack, License No. 0391579
Attorney for L.M. and I.R.M.
901 North Third Street, Suite 120
Minneapolis, MN 55421
Tel. 612.200.9920
Email: jason@autismlawcenter.com

### COUNTERCLAIMS

The Plaintiffs bring this action for a jury trial against the Kimball Area Public Schools ("Kimball") for violation of Title II of the Americans with Disabilities Act of 2009 ("ADA"), 42 U.S.C. §§ 12131-12134, and the Title II implementing regulation, 28 C.F.R. Part 35, by failing to reasonably modify its policies, practices, or procedures to permit a student, I.R.M., to bring his service dog ("Dewey") to school unless accompanied by a separate, full-time, adult handler provided at times by I.R.M.'s mother, L.M.. 42 U.S.C. § 12132; 28 C.F.R. § 35.136(a). Plaintiffs further bring this action against Kimball for violation of Title V of the ADA, 42 U.S.C. § 12203(b) by retaliating against Plaintiffs, who opposed Kimball's unlawful policy and practice, by intimidating, threatening, and interfering with I.R.M.'s participation in his public education and Plaintiff L.M. for aiding the exercise of I.R.M.'s rights.

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). In so doing, Congress found that the forms of discrimination encountered by

13

individuals with disabilities include "the discriminatory effects of overprotective rules and policies" and the "failure to make modifications to existing facilities and practices." *Id*. § 12101(a)(5). The ADA's mandate that a public entity, such as a public school or school district, modify its policies, practices, and procedures to permit the use of a service animal by a student with a disability furthers the ADA's overarching goals of ensuring equal opportunity, full participation, and independence for individuals with disabilities. *See id.* § 12101(a)(7); 28 C.F.R. § 35.136(a).

The ADA also provides, "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a).

## JURISDICTION AND VENUE

This Court has jurisdiction over this action under Title II of the ADA, 42 U.S.C. § 12133, and 28 U.S.C. §§ 1331 and 1345, because it involves claims arising under federal law and is hereby commenced by the United States.

The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 12133.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because: (1) the Defendant Kimball is located and operates in the District of Minnesota, and (2) a substantial part of the events or omissions giving rise to the claims occurred in the District of Minnesota. 28 U.S.C. § 1391.

## PARTIES

1.     Plaintiffs Laura L.M. and her minor son, I.R.M. are citizens of Minnesota, County of Stearns, residing in the Clearwater, Minnesota.  Minor Plaintiff I.R.M. attended Kimball Area

Public Schools during the period of time relevant herein.  I.R.M. is a public-school student with disabilities.

2.      Defendant Kimball Area Public Schools, along with its respective agents, and instrumentalities, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

## FACTS

3.      I.R.M was diagnosed as a toddler with SYNGAP1.[1]  As a result of his medical condition, I.R.M. experiences epilepsy, intellectual disability, autism spectrum disorder, hypotonia, hypothyroidism, and strabismus.  I.R.M. also has a medical history of neuroblastoma and chylous ascites. Additionally, I.R.M. experiences significant sleep disturbance, gait instability and a high pain threshold.

4.      Autism spectrum disorder is a lifelong disorder that affects three core areas of functioning: communication, social interaction and restrictive behaviors and interests. Autism inhibits I.R.M.'s ability to perceive danger, and causes meltdowns, elopement (wandering), and stimming (repetitive body movements or repetitive movement of objects).

5.      I.R.M.'s impairments substantially limit the operation of major bodily functions, including his brain functioning and neurological system, and the major life activities of caring for oneself, walking, speaking, learning, thinking, sensory sensitivities, and communicating. I.R.M. has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 35.104.

6.      I.R.M., a student enrolled in Kimball, is a qualified individual with a disability. 42

---

[1]  SYNGAP1 is diagnosed through molecular genetic testing.  The medical characteristics include developmental and intellectual delays, generalized epilepsy, autism spectrum disorder with accompanying stereotypical behavior of hand flapping, obsessions with certain objects, as well as poor social development. Feeding difficulties are also frequently seen in children suffering from the disorder.

U.S.C. § 12131(2); 28 C.F.R. § 35.104.

7.      In May 2022, I.R.M. obtained a service dog, Dewey, through Can Do Canines, of New

Hope, Minnesota.  Dewey is individually trained to perform tasks for the benefit of I.R.M. that

are directly related to his disabilities in the home, community, and school.

8.      To address I.R.M.'s disabilities, Dewy is trained to prevent elopement, to apply deep

pressure and redirect I.R.M. to prevent or limit meltdowns, and to disrupt self-stimulation.

9.      I.R.M. and the Dewey are also connected by a cape that tethers I.R.M. to Dewey to stop

elopement. The cape also has a handle that I.R.M. uses whenever he is transitioning or walking

in the education setting.  Finally, Dewey has a leash that is used by adults.

10.     Dewey is trained to accompany I.R.M. to school with no food or restroom breaks.

11.     Kimball has adopted policy 535: Service Animals pertaining to the use of service dogs in

its public schools:

> In the case of a student who is unable to care for and/or supervise his or her service
> animal, the student's parent/guardian is responsible for arranging for such care and
> supervision. In the case of an employee or other individual who is unable to care for
> and/or supervise his or her service animal, the employee or other individual's authorized
> representative is responsible for arranging for a service animal's care and supervision.

*Kimball Policy No. 535(V)(G).*

12.     Kimball, in its policy, defined a handler as:

> A "handler" is an individual with a disability who uses a service animal. In the case of an
> individual who is unable to care for and supervise the service animal for reasons such as
> age or disability, "handler" means the person who cares for and supervises the animal on
> that individual's behalf. School district personnel are not responsible for the care,
> supervision, or handling responsibilities of a service animal.

*Kimball Policy No. 535(III)(B).*

16

13.     Kimball's denial of Dewey in the education environment precipitated foreseen self-injurious response from I.R.M.  As a result, I.R.M. was repeatedly injured with bite marks, broken skin, bruises, and scratches.

14.     On September 12, 2022, after consultation with its legal counsel, Kimball declined to modify its policy declining to permit I.R.M. to attend school with Dewey because I.R.M. was not the "handler" as defined by Kimball's policy.  Kimball and public-school personnel refused to assist in any manner with supporting I.R.M.'s use of Dewey in Kimball.  Kimball's position was inconsistent with modifications and accommodations for children with service dogs granted in other Minnesota public schools.  Consequently, Kimball's policy violates the ADA by denying the supports and services necessary for a child with disabilities like I.R.M. to attend its public schools with a service dog.

15.     As a result of the policy and Kimball's refusal to modify the policy, Plaintiff L.M. was required to attend Kimball Elementary beginning on October 24, 2022, to act a handler with Dewey to support I.R.M. during the school day.

16.     The employees within Kimball Elementary were overtly hostile to Plaintiff L.M. from the first day she attended as the handler.  The actions of Kimball employees were not only hostile toward Plaintiff L.M. but also were intended to interfere and did interfere with I.R.M.'s access to his education and his service dog, Dewey.

17.     The hostility and retaliation with the Plaintiffs began when the school personnel working with I.R.M. ostracized Plaintiff L.M. by refusing to acknowledge her presence.  Special education staff intentionally and deliberately interfered with I.R.M.'s access and use of Dewey in the public-school environment including but was not limited to offering an education program that denied him access to critical private services; re-arranging the physical environment such

that I.R.M. was not in close proximity with Dewey; changing restroom access such that I.R.M. had to traverse the entire school to access a restroom though a far nearer one was available; denying I.R.M. access to Dewey for calming and transitions; and by using alternate cues, prompts and aversive stimuli.  Kimball personnel aversive interventions that would trigger meltdowns with I.R.M. include but is not limited to the use of a loud mechanical toy book with vibrant lighting and excessive noise and a cat-toy with a bell in its middle which personnel would shake in I.R.M.'s face.  The purpose was to distract I.R.M. from using Dewey to support his disabling conditions.  Further, Kimball personnel persistently changed I.R.M.'s transitions during the school day, thus exploiting his disability and creating substantial instability in his education. After creating the instability in the education environment, Kimball then punished I.R.M. with a half-day suspension when he responded to the adverse conditions.

18.     Kimball personnel intentionally and deliberately used the administrative policies, procedures, and powers to obstruct, interfere and reprise against Plaintiff L.M..  Kimball held Plaintiff L.M. to differing standards than other personnel including but not limited to restricting Plaintiff L.M. to silence in the public-school setting but was permitted to say "Hello"; and restricting her use of the restroom and her mobile device.  Plaintiff L.M. was also not permitted to slacken the tension in the tether between I.R.M. and Dewey without permission from personnel.  Additionally, Kimball personnel routinely made spurious and false allegations against Plaintiff L.M. for which she was required to defend herself.  In one instance, Plaintiff L.M. was unilaterally removed as the handler for Dewey for two days as Kimball for her "to think about the incident."   Kimball personnel falsely alleged that Plaintiff L.M. had permitted I.R.M. to sit on her lap and assisted I.R.M. with scissor work.[2]

---

[2]   Plaintiffs filed a motion for temporary restraining order with the Administrative Law Judge to stop the practices.

19.     On December 16, 2022, Plaintiffs filed an administrative hearing request to challenge

Kimball's denial of supports and services with the Minnesota Department of Education.  In

response to Plaintiffs' complaint, Kimball filed an administrative hearing request April 7, 2023

seeking, *inter alia*, to require I.R.M. to attend school full days which would preclude him from

attending his long-standing and vital private ABA therapies.  The complaints were joined and an

Administrative Law Judge appointed by the Office of Administrative Hearings presided over the

evidentiary hearing held on May 1, 2, 3, 4 and 23, 2023.  The decision in favor of the Plaintiffs

was issued on June 30, 2023, which Kimball appealed to the United States District Court,

District of Minnesota. (Civil File No. 23-cv-2637).

20.     Kimball's retaliatory conduct continues into the current school year.  I.R.M. was and

continues to be denied before-school recess or to participate in STEM class with his same age

peers.  Kimball personnel insist that I.R.M. must remain inside before school for breakfast,

though he has breakfast before school and that he may not participate in STEM class due to his

disability.[3]

## COUNT I

### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. §§ 12131-12134)

21.     Plaintiffs incorporate and reallege by reference all preceding paragraphs as if they were

fully set forth herein.

22.     Kimball's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C.

§ 12132, and its implementing regulation, 28 C.F.R. Part 35, by:

    a.  Denying I.R.M. an equal opportunity to participate in or benefit from any aid, benefit,
       or service provided to other students, 28 C.F.R. § 35.130(a), (b)(1);

    b.  Providing I.R.M. with an aid, benefit, or service that is not as effective in affording
       equal opportunity to obtain the same result, to gain the same benefit, or to reach the

---

[3]   I.R.M.'s special education program specifically references thus guaranteeing his participation in STEM classes.

same level of achievement as that provided to other students, 28 C.F.R. § 35.130(a), (b)(1);

c. Failing to reasonably modify its policies, practices, or procedures to permit I.R.M. to bring his Service Dog, Dewey, to school without a separate, adult handler provided by the Parent, 28 C.F.R. §§ 35.130(b)(7) and 35.136; and

d. Failing to reasonably modify its policies, practices, or procedures to provide assistance to I.R.M. in handling his Service Dog, 28 C.F.R. §§ 35.130(b)(7) and 35.136.

23.    The Plaintiffs are aggrieved persons entitled to the remedies, procedures, and rights of Title II of the ADA. *See* 42 U.S.C. § 12133.

24.    As a result of Kimball's unlawful actions, I.R.M. has suffered discrimination, has been deprived of independence, experienced pain and suffering and emotional distress, physical injuries, and has been otherwise aggrieved.

25.    Plaintiff L.M. has further incurred, as a result of the Kimball's unlawful actions, out-of-pocket losses; experienced pain and suffering and emotional distress, including anxiety, frustration, humiliation, and stigmatization; and has been otherwise aggrieved.

## COUNT II

### RETALIATION IN VIOLATION OF TITLE V OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §§ 12203(a))

26.    Plaintiffs incorporate and reallege by reference all preceding paragraphs as if they were fully set forth herein.

27.    Kimball's actions constitute retaliation in violation of Title V of the ADA, 42 U.S.C. § 12203(a), by:

a    Intimidating Plaintiffs in the exercise of I.R.M.'s right to modifications and accommodations in the exercise of his right to a public education under Title II of the ADA;

b    Threatening Plaintiffs in the exercise of I.R.M.'s right to modifications and accommodations in the exercise of his right to a public education under Title II of the ADA; and

c      Interfering with Plaintiffs exercise of the modifications and accommodations in the exercise of his right to a public education under the ADA.

28.     I.R.M. and the Parent are aggrieved persons entitled to the remedies, procedures, and rights of Title V of the ADA. *See* 42 U.S.C. § 12203(c).

29.     As a result of Kimball's unlawful actions, I.R.M. has suffered retaliation and reprisals, and has been deprived of independence, experienced pain and suffering and emotional distress, and otherwise been aggrieved.

30.     Plaintiff L.M. has further incurred, as a result of the Kimball's unlawful actions, out-of-pocket losses; experienced pain and suffering and emotional distress, including anxiety, frustration, humiliation, stigmatization, and lost opportunity; and otherwise been aggrieved.

## RELIEF

Plaintiffs pray for the following relief:

A.     Grant judgment in favor of the Plaintiffs and declare that Kimball's actions as set forth in this Complaint violate Titles II and V of the ADA, 42 U.S.C. §§ 12131-12134, 12230 and the Department's implementing regulation, 28 C.F.R. Part 35.

B.     Enjoin Kimball, along with its respective agents, and other instrumentalities, and all others in concert or participation with them, from engaging in discriminatory policies and practices against individuals with disabilities.

C.     Order Kimball to permit I.R.M. to act as the handler of Dewey with assistance from school staff without reprisals or retaliation;

D.     Order Kimball to comply with the requirements of Title II and V of the ADA, 42 U.S.C. §§ 12131-12134, 12230 and the Department's implementing regulation, 28 C.F.R. Part 35, including alteration of Kimball's policy and to make reasonable modifications in its policies, practices, and procedures where necessary to avoid discrimination against a student with a disability who uses a service animal.

E.     Award compensatory damages in excess of $75,000.00, including damages for out-of-pocket expenses, pain and suffering, and emotional distress, to aggrieved persons, including I.R.M. and Plaintiff L.M., in an appropriate amount for injuries suffered as a result of Kimball's failure to comply with the requirements of Titles II and V of the ADA, 42 U.S.C. §§ 12131-12134, 12230 and its implementing regulation, 28 C.F.R. Part 35.

F.     Award fees and costs as prevailing party pursuant to the Civil Rights Attorney's Fees Award Act of 1976.  42 U.S.C. § 1988(b).

F.    Order such other appropriate relief as the interests of justice may require and to make the Plaintiffs whole and place them in the same position they would have been absent Kimball's discrimination and retaliation.

Respectfully submitted,


Date: October 24, 2023          /s/ Margaret O'Sullivan Kane
                                Margaret O'Sullivan Kane /ID # 220243
                                Kane Education Law, LLC
                                1041 Grand Avenue
                                Suite 263
                                Saint Paul, Minnesota 55105
                                Tel. 651.222.8611
                                Fax. 651.221.2623
                                mkane@kaneeducationlaw.com

                                Attorney for Plaintiffs' Counterclaims


**VERIFICATION**

I aver that I have read the foregoing Answer and Counterclaims, and that all of the facts and statements made therein are true and correct to the best of my knowledge and as to those facts stated on information and belief, I also believe them to be true and correct.


Dated: _____          _____
                                L.M.


Subscribed and sworn to before me
this ____ day of October, 2023.