UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KIMBALL AREA PUBLIC SCHOOL, ISD No. 739,<br><br>    Plaintiff, Counter Defendant,<br><br>v.<br><br>I.R.M., by and through his parent, L.M.,<br><br>    Defendants, Counter Claimants. | Civil File No. 23-cv-2637 (NEB/LIB)<br><br>**COUNTER CLAIMANTS' STATEMENT OF THE CASE** |

Counter Claimants submit this Statement of the Case consistent with the Court's Pre-trial Scheduling Notice and Order.

## FACTS

I.R.M. I.R.M., a student enrolled in Kimball, is a qualified individual with a disability. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

In May 2022, I.R.M. obtained a service dog, Dewey, through Can Do Canines, of New Hope, Minnesota.  Dewey is individually trained to perform tasks for the benefit of I.R.M. that are directly related to his disabilities in the home, community, and school.  Dewy is trained to prevent elopement, to apply deep pressure and redirect I.R.M. to prevent or limit meltdowns, and to disrupt self-stimulation, as well as accompany I.R.M. to school with no food or breaks.  I.R.M. and the Dewey are also connected by a cape that tethers I.R.M. to Dewey to stop elopement. The cape also has a handle that I.R.M. uses whenever he is transitioning or walking in the education setting.  Dewey also has a leash that can be used by adults.

Kimball denied I.R.M. access to Dewey during the school day for the 2022/23 on September 12, 2022.  The denial was based not upon the ADA and its regulations but rather

1

Kimball's unlawful policies. The policies and Kimball's interpretation of the policies was the basis of the denial.

Kimball adopted policy 535: Service Animals pertaining to the use of service dogs in its public schools:

> In the case of a student who is unable to care for and/or supervise his or her service animal, the student's parent/guardian is responsible for arranging for such care and supervision. In the case of an employee or other individual who is unable to care for and/or supervise his or her service animal, the employee or other individual's authorized representative is responsible for arranging for a service animal's care and supervision.

*Kimball Policy No. 535(V)(G).*

Kimball's policy defined a handler as:

> A "handler" is an individual with a disability who uses a service animal. In the case of an individual who is unable to care for and supervise the service animal for reasons such as age or disability, "handler" means the person who cares for and supervises the animal on that individual's behalf. School district personnel are not responsible for the care, supervision, or handling responsibilities of a service animal.

*Kimball Policy No. 535(III)(B).*

As a result of Kimball's denial, beginning on October 24, 2022, Counter Claimant L.M. agreed to act as "handler", without pay, with Dewey to support I.R.M. during the school day. In response to L.M. coming into the school to support I.R.M. and Dewey school personnel working with I.R.M. ostracized L.M. first by refusing to acknowledge her presence. Special education staff interfered with I.R.M.'s access and use of Dewey by offering an education program that denied him access to critical private services; re-arranging the physical environment such that I.R.M. was not in close proximity with Dewey; changing restroom access such that I.R.M. had to traverse the entire school to access a restroom though a far nearer one was available; denying I.R.M. access to Dewey for calming and transitions; and by using alternate cues, prompts and aversive stimuli.

In response to L.M.'s attendance at school, Kimball personnel routinely made spurious and false allegations against L.M. for which she was required to defend herself and be disciplined by school administrators.  In one instance, Plaintiff L.M. was unilaterally removed as the handler for Dewey for two days as Kimball for her "to think about the incident."  Kimball personnel falsely alleged that L.M. had permitted I.R.M. to sit on her lap and assisted I.R.M. with scissor work.

Kimball also held L.M. to standards of conduct that differed from other school personnel including but not limited to limiting her to silence with the exception of saying "Hello" in the classroom, restricting her use of the restroom, and her mobile device.  Plaintiff L.M. was also not permitted to slacken the tension in the tether between I.R.M. and Dewey without permission from personnel.

## PARTICULARIZED FACTS AND CLAIMS

L.M. individually and on behalf of her minor son, I.R.M. (Counter Claimants) brought this action for a jury trial against the Kimball Area Public Schools ("Kimball") for violation of Title II of the Americans with Disabilities Act of 2009 ("ADA"), 42 U.S.C. §§ 12131-12134, and the Title II implementing regulation, 28 C.F.R. Part 35, by failing to reasonably modify its policies, practices, or procedures to permit a student, I.R.M., to bring his service dog ("Dewey") to school unless accompanied by a separate, full-time, adult handler provided at times, without pay, by I.R.M.'s mother, L.M. 42 U.S.C. § 12132; 28 C.F.R. § 35.136(a).  Counter Claimants also brought this action against Kimball for violation of Title V of the ADA, 42 U.S.C. § 12203(b) by retaliating against Counter Claimants L.M. and I.R.M., who opposed Kimball's unlawful policy and practice, by intimidating, threatening, and interfering with I.R.M.'s participation in his public education and Counter Claimant L.M. for aiding the exercise of I.R.M.'s rights.

3

The federal regulation under the ADA provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). With respect to service animals, regulations provide that "a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a).

Counter Claimants will establish that I.R.M. was discriminated against by proving that Kimball failed to make reasonable modifications to its policies, practices, or procedures. 28 C.F.R. §35.130(b)(7).

In this case, Kimball did not raise or contend that the modifications would fundamentally alter the nature of its services consistent with 28 C.F.R. § 35.130(b)(7).[1] See, *Reply to Counter Claim*, Dkt. 10.

As a general rule, a public entity "shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a). Subsequent regulatory subsections address exceptions or limitations to this general rule.

Kimball has contended that I.R.M. is not able to serve as Dewey's handler. The applicable language states as follows:

> A service animal shall be under the control of its handler. A service animal shall have a harness, leash, or other tether, *unless either the handler is unable because of a disability to use a harness, leash, or other tether,* or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, *in which case the service animal must be otherwise under the handler's control* (e.g., voice control, signals, or other effective means).

---

[1] Kimball instead asserted that "the level of support I.R.M. requires to utilize Dewey would not be a reasonable accommodation. . ." *Dkt. 10*, p. 11, ¶ 32.

28 C.F.R. §35.136(d) (emphasis added).

While case law defining a "handler" under the ADA is scant, a plain reading of 28 C.F.R. § 35.136(d) concludes that, for example, "tethering a service animal to the wheelchair of a disabled person constitutes 'control' over the animal by the disabled person, acting as the animal's 'handler.'

Counter Claimants retaliation claims further rest on the regulatory language of the ADA. Federal regulations define retaliation as follows:

> (a)  No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
> (b)  No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. §35.134. Counter Claimants will prove that Kimball personnel opposed I.R.M.'s use of Dewey in the public setting and that personnel persisted in intimidating, threatening, and interfering with I.R.M.'s access to Dewey once L.M. began attended as a "handler."

### ITEMIZATION AND EXPLANATION OF CLAIMED DAMAGES

Counter Claimants are seeking the following relief:

1. Withdraw appeal of administrative decision;
2. Attorneys' Fees and Costs for administrative hearing and appeal in the amount of $64,772.00 as prevailing party pursuant to 20 U.S.C. § 1415(i)(3);
3. Counter Claimant L.M.'s out-of-pocket in the amount of $9,137.50 representing the tuition for full day attendance of her younger child for 5 months in order to attend as Dewey's "handler" at $240.00 per month in the total amount of $1,200.00. L.M. was also required to pay attorneys' fees in the amount of $7,937.50 to represent I.R.M. prior to the commencement of the administrative hearing. Consequently, the fees and costs are not recoverable through a fees petition;
4. L.M.'s wages for serving in public school as a "handler" for Dewey in the amount of $13,000.00, representing 130 days at 5 hours per day @ $20.00/hr;

5. Compensatory damages to I.R.M. for discrimination and retaliation in the amount of $600,000.00;
6. I.R.M.'s lost education opportunity $86,000.00 (172 days at $500.00/day);
7. Compensatory damages to L.M. for retaliation in the amount of $300,000.00
8. Nonmonetary relief as follows:

   a. Revision of service animal policy;
   b. A written apology to I.R.M. and L.M.;
   c. Identification of the individuals responsible for prohibiting the use of Dewey and disciplinary letters in each of the identified individuals' personnel files;
   d. Identification of individual within Kimball responsible for oversight of policy, implementation, and monitoring of policy;
   e. Kimball will add to its current annual training for all relevant personnel (i.e., principals, vice principals, deans, assistant deans, counselors, teachers, special education teachers and paraeducators in the following topics:

      i. The rights of students with disabilities under the IDEA and ADA;
      ii. The rights of parents of students with disabilities;
      iii. The use of service animals in the education environment; and
      iv. The responsibility to report peers when the rights of students with disabilities are violated by professionals.

   f. A letter from the Superintendent published on Kimball website stating that disability discrimination is not permitted within Kimball including barring or interfering with the use of service animals

9. Attorneys' Fee and Costs for ADA claims: $9,510.00.

The settlement position does not include punitive damages, which Counter Claimants may amend the pleadings to obtain based on further discovery.

                                        Kane Education Law, LLC.

DATE: November 28, 2023       /s/ Margaret O'Sullivan Kane
                                        Margaret O'Sullivan Kane/ID # 220243
                                        1041 Grand Avenue, Suite 263
                                        Saint Paul, Minnesota 55105
                                        Tel. 651.222.8611
                                        mkane@kaneeducationlaw.com

                                        Attorney for Counter Claimants