UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Kimball Area Public School, Independent                 Case No. 23-cv-2637 (NEB/LIB)
School District No. 739,
                   Plaintiff/Counterclaim
                   Defendant,

v.                                                                              **ORDER**

I.R.M., by and through his Parent,
L.M.,

                   Defendants/Counterclaim
                   Plaintiffs.

_____

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, upon Plaintiff's Motion to Compel Discovery, [Docket No. 60], and upon Plaintiff's Motion to Amend Scheduling Order. [Docket No. 77]. The Court held a Motion Hearing on February 11, 2025, and took the matter under advisement.

For the reasons discussed herein, Plaintiff's Motion to Compel Discovery, [Docket No. 60], and Plaintiff's Motion to Amend Scheduling Order, [Docket No. 77], are **GRANTED** in part and **DENIED** in part.

## I.     BACKGROUND.

This lawsuit was filed on August 28, 2023, by Plaintiff, Kimball Area Public Schools (the "District"). It appeals a decision by the Minnesota Department of Education ordering the District to provide a handler for Defendant I.R.M.'s autism assistance dog ("AAD") as part of the student's Individualized Education Program ("IEP"). (See Compl. [Docket No. 1] at ¶ 65; Plf.'s Statement of the Case [Docket No. 11] at 1). The District does not claim any damages and seeks only a

1

reversal of the Minnesota Department of Education's decision. (See Compl. [Docket No. 1] at ¶¶ 88–92; Plf.'s Statement of the Case [Docket No. 11] at 5).

On October 24, 2023, Defendant I.R.M.'s mother, L.M., filed a counterclaim against the District alleging, in part, that the District violated Titles II and V of the Americans with Disabilities Act of 2009 ("ADA") and its implementing regulations by failing to reasonably modify its school policies that prevented I.R.M. from bringing his service dog to school unless accompanied by a separate, full-time, adult handler. (Answer and Counterclaim [Docket No. 6] at ¶¶ 21–30; Def.'s statement of the Case [Docket No. 13] at 1). I.R.M. seeks a withdrawal of Plaintiff's appeal of the MN Department of Education's decision, attorneys' fees, reimbursement of expenses to L.M. incurred as a result of her being I.R.M.'s service dog handler, lost education opportunity damages for I.R.M., compensatory damages for I.R.M. and L.M. for discrimination and retaliation, as well as, various other nonmonetary relief. (Answer and Counterclaim [Docket No. 6] at ¶¶ A–F;[1] see also Def.'s statement of the Case [Docket No. 13] at 6).

The facts regarding the District's appeal of the MN Department of Education's decision, as well as, Defendants' counterclaims are documented in an Administrative Record provided by Minnesota's Office of Administrative Hearings. [Docket Nos. 19–22]. This record spans approximately 4,271 pages and includes around 170 exhibits. In their counterclaim, Defendants I.R.M. and L.M. assert that the same series of decisions by the District's administration resulted in the alleged ADA violations.

The events leading to I.R.M.'s dispute with the District are as follows. In May of 2022, I.R.M., then enrolled in the second grade at the District during the 2022-2023 school year, obtained

---

[1] The Defendants' Counterclaim mistakenly labels both the sixth and seventh paragraphs of the requests for relief as item "F." This is clearly a typographical error. Therefore, the Court's reference to paragraph "F" should be understood as encompassing both paragraphs listed in the Defendants' requested relief.

a service dog. (Compl. [Docket No. 1] at ¶¶ 7, 17). I.R.M. had attended the District Elementary school since his kindergarten year. (Id. at ¶ 7). He has been diagnosed with several complex medical ailments, which include frequent seizures, neuroblastoma, intellectual disability, SYNGAP1-related intellectual disability,[2] global developmental delay, and autism spectrum disorder. I.R.M. has a full-scale IQ of 46, which places him below the first percentile. (Id. at ¶ 8). As a result of his disorders, I.R.M. displayed several behaviors, including self-injurious behavior and aggression towards others; specifically, the Complaint alleges that I.R.M. has a history of biting himself and the adults who support him at school. (Id. at ¶¶ 9–10).

I.R.M. has had an Individualized Education Program ("IEP") the entire time he has been enrolled in the District. (Id. at ¶ 11). In 2022-2023, he received special education and related services based on both his Autism Spectrum Disorders ("ASD") and his Developmental/Cognitive Disability ("DCD"), which was found to be in the severe/profound range. (Id. at ¶ 13). As a result, I.R.M. receives support from a one-on-one paraprofessional during all times he is at school. (Id. at ¶15).[3]

In 2018, I.R.M.'s parent, L.M., began working with "Can Do Canines" for I.R.M. to receive an "Autism Assistance Dog" ("AAD"). (Id. at ¶ 17). I.R.M. received the dog in May 2022. (Id.). The dog was trained to respond to verbal cues and assist with I.R.M.'s disability, such as "visit" and "kisses," when I.R.M. displayed a problematic behavior. (Id. at ¶ 18). Shortly after receiving the dog, L.M. informed I.R.M.'s paraprofessional that I.R.M. would be using the dog at school.

---

[2] The Court notes that SYNGAP1 is a gene that provides instructions for making SynGAP, a protein critical for brain function. Specifically, SynGAP is expressed in neurons and plays a key role in synaptic plasticity, which is essential for learning and memory. Mutations of SYNGAP1 often lead to intellectual disability as well as autism spectrum disorder.

[3] This paraprofessional monitors the student for seizure activity and keeps the student safe while walking around the classroom and elementary building hallways, assists the student with both daily living and classroom activities, assists the student with transitioning, monitors the student for self-injurious behaviors, and de-escalates the student's problem behaviors, which in I.R.M.'s case includes such behaviors as refusing to move while lying on the ground, biting himself, and biting and pinching others. (Id. at ¶ 16).

However, due to I.R.M.'s cognitive impairments, he would be unable to control or handle the dog while at school when a tether[4] connecting the student to the dog was unclipped. (See Id. at ¶¶ 20, 27).

On August 9, 2022, the District's principal emailed L.M. informing her that there were concerns that needed to be addressed before the dog would be allowed in the school. (Id. at ¶ 20). Specifically, the District's policy required that service animals be under the care and supervision of a handler pursuant to the ADA. (Id. at ¶ 21 (citing 28 C.F.R. § 35.136(e)). The policy further stated that if a student was not capable of handling the service animal, the student's parent would be responsible for arranging for the care and supervision as required by the ADA, the District itself could not be responsible for the care, supervision, or handling responsibilities of a service animal. (Id. at ¶ 22). Because I.R.M.s cognitive impairment prevented him from providing care and supervision[5] to the service animal during the entire school day, he would be unable to bring the service animal into the school unless his parent could provide a separate, adult handler for the dog. (Id. at ¶¶ 22–23). In response, L.M. requested that I.R.M.'s one-on-one paraprofessional or another District staff member act as I.R.M.'s service dog handler.

On October 17, 2022, L.M. and a representative from the service dog provider "Can Do Canines" outlined to the District that a handler would be required to do a variety of handling tasks for the dog, such as issuing verbal commands such as "walk on" or "kisses"; oversee the service dog while I.R.M. participated in physical education class and recess, as well as, cue the service dog to leave food alone and provide the dog with reinforcement for not eating I.R.M.'s (and other

---

[4] I.R.M.'s disabilities required him to be "tethered" to his service dog by a harness attached around his waist that connects to a harness attached to the dog's back and torso area. The service dog's harness would then be separately connected to a leash held or worn by an adult handler. An adult must hold the leash when the service dog is tethered to I.R.M. "during a transition, which requires the adult to be within arms-reach" of I.R.M. (Id. at ¶ 24).

[5] I.R.M. also needs adult assistance to direct his service dog while moving, and the service dog needs frequent verbal cues from adults to perform functions that support I.R.M. (Id. at 25). The District's complaint states that I.R.M. is often incapable of issuing verbal cues to his service dog. (Id.).

student's) food. (Id. at ¶ 27). In light of the extensive support staff would need to provide I.R.M.'s service dog, the District notified L.M. on October 19, 2022, that District staff would not serve as handlers for I.R.M.'s service dog and the ADA did not require the District to separately provide any such service.

On October 24, 2022, L.M. began attending school to serve as her son's service dog handler. However, the District alleges that L.M.'s own behavior in the classroom caused several disruptions, which included texting and talking on her phone during class time, taking photographs of I.R.M. during class,[6] intervening in academic work that I.R.M. was performing, forcing I.R.M. to interact with his service dog, and telling District staff how they ought to be interacting with I.R.M. (Id. at ¶ 30).[7] In addition, the District maintains that the service dog itself served as a distraction to I.R.M. during class and seldom assisted him in completing the tasks he found challenging. (Id. at ¶ 31). The Complaint also states that I.R.M.'s behaviors of biting and pinching were actually increased by the service dog's presence, and staff noticed that when I.R.M. could not bite or pinch his staff, he would bite and pinch his service dog which responded by yelping and cowering. (Id. at ¶ 32).

On November 9, 2022, L.M. renewed her request for the District to add specific accommodations to allow the student to access his service dog at school. (Id. at ¶ 33). However, this request was also denied as the District once again refused to have staff act as I.R.M.'s separate service dog handler. (Id. at ¶¶ 35–36).

On November 23, 2022, L.M. objected to the District's refusal to provide a separate service

---

[6] This fact regarding taking photographs is in dispute. However, it appears to be undisputed that L.M. would answer phone calls during class time. (See O'Sullivan Kane Decl. Ex. 13 [Docket No. 71-1] at 7 (explaining in the answer to Interrogatory No. 4 that L.M. would take phone calls from I.R.M.'s physician)).

[7] L.M. was banned from the school for two days as a result, and I.R.M could not have his service dog present at school during this time.

dog handler, and she filed a Due Process Complaint and Request for Hearing with the MN Department of Education against the District on December 16, 2022, asserting that the District is required to provide a separate, adult handler for I.R.M.'s service dog. (Id. at ¶ 38). L.M. continued to attend school through March 2023 to serve as I.R.M.'s service dog handler. (Id. at ¶ 39). During this time, L.M.'s legal counsel notified the District on February 27, 2023, that I.R.M. would be homeschooled until the MN Department of Education granted L.M.'s request. (Id. at ¶ 52). However, this triggered the administrative action at the MN Department of Education to be dismissed on March 9, 2023, as the District had no obligation to provide for I.R.M. once he was no longer enrolled at the school. (Id. at ¶ 53). Subsequently, L.M. re-enrolled I.R.M. at the school, and the student returned to the District on March 13, 2023. (Id. at ¶ 55).

L.M. then once again requested that a service dog handler be separately provided by the District. (Id. at ¶ 56). The request was again denied, and L.M. refiled her Due Process Complaint and Request for Hearing with the MN Department of Education. (Id. at ¶¶ 56–58). The matter was overseen by Administrative Law Judge Eric L. Lipman (the "ALJ"). The ALJ determined that the service dog was necessary and that the District must provide a separate service dog handler to support I.R.M.'s use of his service dog at school. (Id. at ¶ 65). The District then implemented the ALJ's order to I.R.M.'s IEP. (Id. at ¶ 67).[8]

On August 28, 2023, in the present case, the District separately filed its appeal of the ALJ's order pursuant to 20 U.S.C. § 1415(i)(2). (See generally Id.). On October 24, 2023, L.M. answered the District's Complaint and asserted counterclaims against the District, alleging violations of the

---

[8] On July 26, 2023, L.M. filed a complaint in this Court in a separate case—File No. 23-cv-2226 (NEB/LIB)— requesting an award of attorney's fees and costs related to the underlying Administrative proceeding. On November 29, 2023, this Court issued an Order, [Docket No. 15], staying the 23-cv-2226 action pending the final decision on the appeal from the underlying administrative decision in the above-captioned case regarding the appeal of the ALJ's determination.

ADA. (See generally Answer and Counterclaim [Docket No. 6]).

On May 22, 2024, the District served a set of 21 Interrogatories and 15 Requests for Production of Documents on Counterclaimants I.R.M. and L.M. (Seiler Decl. Ex 1 [Docket No. 63]). Under Federal Rule of Civil Procedure 33(b)(2), Counterclaimants' responses were due by June 24, 2024. Counterclaimants' counsel, however, requested an extension to provide for the discovery requests by July 2, 2024. (Id. Ex. 2). The District states it did not agree to any extensions.[9] On July 2, 2024, Counterclaimants emailed the District and requested another week to complete the discovery requests. (Id. Ex 3 at 3).[10] On July 8, 2024, Counterclaimants' counsel emailed the District again, stating that she was having difficulty connecting with her client, but she would provide them with responses by the next day. (Id. Ex. 4 at 2).[11] On July 9, 2024, Counterclaimants provided a response to the District's discovery requests, but L.M. did not sign the discovery responses as required by Rule 33(b)(5). (Id. Ex. 5). On July 17, Counterclaimants provided signed "updated" responses to the discovery requests (which differed in content from the July 9, 2024, responses). (Id. Ex. 6 at 21).

On July 26, 2024, the District sent a letter to Counterclaimants' counsel highlighting several deficiencies in the July 17, 2024, responses to the District's discovery requests. (Id. Ex. 7).[12] Primarily, the District noted that many of Counterclaimants' answers simply stated generically that the answer to the discovery request could be found in the administrative record and cited to the entirety of the administrative record as support. The District requested that the deficiencies be cured by August 9, 2024. (Id.).

---

[9] All emails provided to this Court confirm that the District never explicitly agreed to provide Counterclaimants an extension of time to comply with the discovery requests. Instead, it appears Counterclaimants' counsel unilaterally decided that an extension of time would be appropriate.
[10] Again, the District states they did not agree to any extensions.
[11] Again, it appears that Counterclaimants unilateral decided that an extension of time would be appropriate.
[12] This notice alleged that Counterclaimants' answers to Interrogatories 2, 3, 5, 9, 10, 12, 14–16, 18, and 20, as well as, the production to Document requests 1, 2, 9, 11, and 12 were deficient.

On August 8, 2024, Counterclaimants' counsel responded that she had "not forgotten the notice of deficiencies and [would] be responding next week." (Id. Ex. 8). However, Counterclaimants did not respond until September 3, 2024, in a letter that provided some additional details (although not as a formal discovery response signed by L.M.) and objected to the remainder of the District's perceived deficiencies on the grounds that the information requested could generally be found in the Administrative Record and referring the District to Counterclaimants' narrative response to Interrogatory No. 4. (Id. Ex. 9 at 2–10).[13]

On January 3, 2025, the District responded with its second Notice of Deficiency letter explaining that continued deficiencies existed with Counterclaimants' answers to Interrogatory Nos. 3, 12, 18 and Request for Production of Documents No. 9. (Id. Ex. 10). In addition, the January 3, 2025, letter also gave notice that the District believed Counterclaimants' answer to Interrogatory No. 21 was also deficient. (Id.).[14] The discovery requests remaining at issue—as outlined by the District's second notice of deficiency letter—all continued to relate to the counterclaims regarding discrimination and retaliation made by L.M. and I.R.M. against the District. (See generally Id.). The second notice of deficiency letter requested that Counterclaimants cure the outlined deficiencies before the close of discovery on January 15, 2025. (Id.; see also Second Amended Pretrial Scheduling Order [Docket No. 50] (Ordering Fact Discovery to Close on January 15, 2025). However, Counterclaimants did not respond by the deadline. On January 16, 2025, the District sent yet another letter informing that if the deficiencies were not cured by January 21, 2025, the District would file a motion to compel discovery. (Id. Ex. 11).

---

[13] An un redacted version of Ex. 9 can be found at [Docket No. 74-1]. The letter gives supplemental (albeit unsigned) responses to Interrogatories 2, 14, 16, and 20 and further objects to the remainder of the alleged deficiencies regarding the interrogatories. The letter did not provide any further information regarding the District's document requests.

[14] The District did not object to Counterclaimants' answer to Interrogatory No. 21 in its July 26, 2024, letter. Instead, the objection was raised for the first time in this second notice of deficiency letter.

On January 20, 2025, Counterclaimants' counsel sent a letter indicating that they had tried to address the District's concerns regarding the District's first notice of deficiency, but "[t]here was no further indication that the response to the deficiencies continued to be deficient until the eve of the conclusion of discovery." (Id. Ex. 12). The letter from Counterclaimants' counsel went on to reiterate Counterclaimants' previous general objection to the Interrogatories that the asserted "[counter]claims and the factual basis for such claims had been fully provided through the administrative hearing." (Id.). In sum, the Counterclaimants' counsel's January 20, 2025, letter did not provide any additional information to the ongoing discussion, but instead echoed the Counterclaimants' final position that the information sought through the Interrogatories at issue could generically be found in the administrative record or in the Counterclaimants' narrative summary of that record in their answer to Interrogatory No. 4.

Consequently, on January 28, 2025, the District filed its Motion to Compel Discovery, [Docket No. 60], outlining its perceived deficiencies in the responses to Interrogatory Nos. 3, 12, 18, and 21 and Request for Production of Documents No. 9. The Court held a motion hearing on February 11, 2025, and Plaintiff's motion was taken under advisement thereafter. (Minute Entry [Docket No. 76]).

## II.    STANDARD OF REVIEW.

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant</u> to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Courts generally have construed Rule 26(b)(1) broadly. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); <u>see</u> <u>also</u> <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). A party may move for an order

compelling an answer or production if the opposing party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents or fails to respond that inspection will be permitted" under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

However, the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation.  See, e.g., Sierrapine v. Refiner Prods. Mfg., Inc., 275 F.R.D. 604, 609 (E.D. Cal. 2011). As such, parties are not entitled to discovery for the purpose of developing new claims or defenses that are not already identified in the pleadings. See, e.g., Leisman v. Archway Med., Inc., No. 4:14CV1222 RLW, 2015 U.S. Dist. LEXIS 109381, 2015 WL 4994084, at *2 (E.D. Mo. Aug. 19, 2015). Accordingly, to preclude fishing expeditions in discovery, courts require the party seeking discovery to make a threshold showing of relevance before the production of information is required. Hofer, 981 F.2d at 380. This threshold showing "is met if the information sought is 'relevant to the subject matter involved in the pending action.'" Orduno v. Pietrzak, No. 14-cv-1393 (ADM/JSM), 2016 U.S. Dist. LEXIS 138492, 2016 WL 5853723, *3 (D. Minn. Oct. 5, 2016) (quoting Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 187 F.R.D. 578, 579 (D. Minn. 1999)); see also, Castle Aero Fla. Int'l, Inc. v. Mktg. & Fin. Servs., Inc., No. 11-2672 (PAM/JJG), 2013 U.S. Dist. LEXIS 199295, 2013 WL 12152475, at *2 (D. Minn. Jan. 4, 2013) ("Information is relevant if it 'bears on, or [] reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'").

## III.    ANALYSIS OF PLAINTIFF'S MOTION TO COMPEL. [DOCKET NO. 60].

The District seeks an order from this Court compelling Defendants/Counterclaim Plaintiffs ("Counterclaimants") to provide responses to its written discovery requests. (Plf.'s Mot. [Docket No. 60]). Specifically, the District seeks supplemental responses to Interrogatory Nos. 3, 12, 18,

and 21. In addition, the District seeks a supplemental response to Request for Production No. 9.[15] Counterclaimants oppose the District's motion arguing that: (1) the District "did not undertake it[s] meet-and-confer requirement prior to filing the current motions[,]" and (2) the responses to the District's written discovery requests are complete and comprehensive. (Counterclaimants' Memo. [Docket No. 70] at 5–12). The Court will analyze each of these arguments, beginning with the threshold issue of whether the District has satisfied its meet-and-confer requirement.

### A. Sufficiency of the District's Meet-and-Confer Efforts.

The District filed a Meet-and-Confer Statement, [Docket No. 65], certifying that the District's counsel offered to meet-and-confer about Counterclaimants' discovery responses in a letter dated January 16, 2025, but the Counterclaimants did not communicate that they wished to meet-and-confer. (See Seiler Decl. Ex. 11 [Docket No. 63-11] (a copy of the January 16, 2025, letter)). As discussed in Section I supra, this exchange of letters stems from the District's July 26, 2024, first notice of deficiency, which outlined numerous alleged deficiencies in Counterclaimants' answers to the served interrogatories and requests for document production. (See Seiler Decl. Ex. 7 [Docket No. 63-7] (a copy of the July 26, 2024, notice of deficiency letter identifying perceived deficiencies with answers to Interrogatory Nos. 2, 3, 5, 9, 10, 12, 14, 15, 16, 18, and 20, as well as, document requests Nos. 1, 2, 9, 11, and 12)). Specifically, the July 26, 2024, notice of deficiency challenges the sufficiency of Counterclaimants' responses where Counterclaimants objected to the discovery request on the generic grounds that "the information is already known or [is] equally available to [the District][,]" and then provides a "see generally"

---

[15] In addition, the District requests an order awarding the district its costs and expenses incurred in bringing this motion pursuant to Federal Rule of Civil 37(d)(3) (see Plf.'s Mot. [Docket No. 60]), as well as, in the alternative, for an order amending the current operative scheduling order for the "purpose of permitting the District to [re]depose Counterclaimant L.M. regarding her supplemental answers." (Plf.'s Memo. [Docket No. 62] at 17). For the reasons stated in this order, both of these requests are **DENIED**.

cite to the Administrative Record. (See, e.g., Id. at 4). On September 3, 2024, Counterclaimants then provided some additional information in her reply to the District's July 26, 2024, notice of deficiency letter. (See Seiler Decl. Ex. 9 [Docket No. 63-9] (a copy of the September 3, 2024, reply letter)).

It is evident that this September 3rd reply letter attempted to address many of the District's concerns because in the second deficiency letter sent to the Counterclaimants on January 3, 2025, the scope of the deficiencies was refined to include only Interrogatory Nos. 3, 12, 18, 21, and Request for Production No. 9. (See Seiler Decl. Ex. 10 [Docket No. 63-10] (a copy of the January 3, 2025, second notice of deficiency letter setting a response deadline of January 15, 2025). These perceived deficiencies were again primarily rooted in Counterclaimants' decision to answer the Interrogatories by simply providing a long string cite to the Administrative Record comprising hundreds of transcript pages. (See e.g., Id. at 4). Counterclaimants did not reply to the second deficiency letter within the prescribed time limits, and, as a result, the District sent the January 16, 2025, follow-up letter stating that if Counterclaimants do not address the continued deficiencies in their discovery responses by January 21, 2025, the District would be required to seek an order from this Court compelling a response. (See Seiler Decl. Ex. 11 [Docket No. 63-11] (a copy of the January 16, 2025, letter)).

Counterclaimants' counsel then responded on January 20, 2025, once again stating generically that no further responses were necessary as "[t]he claims and factual basis for the claims have been fully provided through the administrative hearing . . ." (See Seiler Decl. Ex. 12 [Docket No. 63-12] (a copy of Counterclaimants' January 20, 2025, letter)). As a result, on January 28, 2025, the District filed its Motion to Compel Discovery. [Docket No. 60].

Counterclaimants now take the position that because the District never "personally

engage[d] in two-way communication with [Counterclaimants] to meaningfully discuss each contested discovery dispute" the District has not "satisfy[ed] the meet-and-confer requirement or the prerequisite of a certification of having conferred in good faith." (Counterclaimants' Memo. [Docket No. 70] at 5–6 (citing <u>Shuffle Master, Inc. v. Progressive Games, Inc.</u>, 170 F.R.D. 166, 170–171 (D. Nev. 1996) (requiring that parties "to have had an actual meeting or conference"); <u>Ross v. Citi financial, Inc.</u>, 203 F.R.D. 239, 239–40 (S.D. Miss. 2001))). However, for the reasons stated below, the Court finds that the District has satisfied its meet-and-confer requirement under Federal Rule of Civil Procedure 37(a)(1) and L.R. 37.1(a).

The Federal Rules of Civil Procedure require a party to include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery to obtain it without court action." Fed. R. Civ. P. 37(a)(1). This meet-and-confer requirement is also outlined by the District's Local Rules. <u>See</u> D. Minn. LR 7.1(a) ("Before filing a motion . . . the moving party must, if possible, meet-and-confer with the opposing party in a good-faith effort to resolve the issues raised by the motion."). The purpose of the meet-and-confer requirement is to prevent the unnecessary expenditure of judicial resources. Parties must confer in good faith with the hope that disputes are resolved before judicial intervention is necessary. <u>Asi, Inc. v. Aquawood, LLC</u>, No. 19-cv-763 (JRT/DTS), 2023 U.S. Dist. LEXIS 202007, at *10 (D. Minn. June 27, 2023) (citing <u>Shuffle Master, Inc. v. Progressive Games, Inc.</u>, 170 F.R.D. 166, 171 (D. Nev. 1996) ("a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention")).

A Court may deny a motion when the parties fail to meet-and-confer in good faith prior to filing the motion. <u>Mgmt. Registry, Inc. v. A.W. Cos.</u>, No. 17-cv-5009 (JRT/KMM), 2019 U.S.

Dist. LEXIS 80579, 2019 WL 2024538, at *3 (D. Minn. May 8, 2019). Indeed, the meet-and-confer obligation is no mere formality — the record must establish that the parties have "engaged in a genuine and good-faith discussion" about their dispute. Id. at *1. However, when it appears that a meet-and-confer would not have resolved the issue, a court may excuse the failure. See, e.g., Foster v. Litman, No. 19-cv-260 (JNE/ECW), 2020 U.S. Dist. LEXIS 811, 2020 WL 39192, at *4 n.4 (D. Minn. Jan 3, 2020) ("While the Court warns Plaintiff that future motions to compel should not be brought prior to at least attempting to meet-and-confer and the failure to do so may well result in denial of the motion, the Court will not deny this motion on this basis, as it does not appear that the parties would be able to work out their differences with respect to the dispute at issue.").

Moreover, Courts have found that the meet-and-confer requirement can be met where a party formally or informally requests discovery but is denied. See Asi, Inc., 2023 U.S. Dist. LEXIS 202007, at *10 (citing Oleson v. Kmart Corp., 175 F.R.D. 570, 571 (D. Kan. 1997) ("Based upon the number and tenor of the discovery disputes in this case, it is unlikely that the issues before the court would have been resolved by additional efforts to confer between counsel.")); Pierce v. Fremar, LLC, No. 09-4066, 2010 U.S. Dist. LEXIS 89629, 2010 WL 3420169, at *1 (D.S.D. Aug. 27, 2010) ("Before the court grants a Rule 37 motion, the parties, at a minimum, must have informally requested the information and been denied access by the other party.").

Indeed, courts are hesitant to strictly interpret the meet-and-confer requirement when the parties have otherwise made a genuine effort to resolve the discovery disputes, but they have nonetheless reached an impasse unlikely to be resolved with further meet-and-confers. The rationale behind this exception is that using the meet-and-confer requirement as a tool for a party seeking to avoid discovery to further delay the resolution of the issue subverts the purpose of the meet-and-confer requirements—to prevent the unnecessary expenditure of judicial resources. See

14

Asi, Inc., 2023 U.S. Dist. LEXIS 202007, at *10 ("Unfortunately, even rules meant to facilitate the resolution of disputes can be abused."). To put this another way, once a party seeking to avoid discovery has demonstrated an unwillingness to further provide the requested information, additional meet-and-confer efforts become futile and serve only to delay the resolution of the dispute rather than facilitate it.

In the present case, the primary issues outlined in the District's first and second notices of deficiency concern whether Counterclaimants have sufficiently answered the Interrogatories—which seek information regarding their ADA claims against the District—by merely providing a generic string cite to hundreds of documents in the Administrative Record. Despite efforts by both parties, which appropriately have significantly narrowed the disputes to only a few interrogatories and a single request for production, they remain at an impasse over the outstanding discovery issues identified in the District's second deficiency letter dated January 3, 2025.

Despite multiple notices that the District would seek judicial intervention if the deficiencies were not addressed, Counterclaimants, in their January 20, 2025, reply letter, maintained that their responses citing to the Administrative Record were sufficient and that the District could itself locate the requested information within the Administrative Record. The Court finds that this letter plainly signaled that Counterclaimants would not further supplement their discovery responses. Notably, not only does the letter fail to address the specific concerns raised in the District's second notice of deficiency, it further demonstrates that additional meet-and-confer efforts would have been futile. As a result, the Court will not here require additional meet-and-confer efforts on behalf of the parties to attempt to resolve their discovery dispute as such efforts would clearly be unproductive, serving only to cause additional delays and waste of litigation resources.

Accordingly, the Court concludes that the District has satisfied its meet-and-confer

obligations under both Rule 37(a)(1) and Local Rule 7.1(a), and it will proceed to consider the merits of the District's Motion to Compel.

### B. Sufficiency of Counterclaimants' Answers to the District's Discovery Requests.

The District argues that Counterclaimants' answers to Interrogatories Nos. 3, 12, 18, and 21, as well as, Document Request No. 9 are all deficient on the grounds that they are evasive and incomplete. (Plf.'s Memo. [Docket No. 62] at 7–17). The Court will now analyze each response to determine whether Counterclaimants' responses are sufficient under Federal Rules of Civil Procedure 33(b)(3) (for response to interrogatories) and 34(b)(2) (for requests for production).

### 1. Waiver of Objections

Before analyzing whether Counterclaimants' answers to the District's written discovery requests are sufficient, the Court first notes that Counterclaimants have waived all objections to said request. Both Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A) require that answers and objections be served "within 30 days after being served" with either the interrogatories or requests for document production.[16] "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); see Cargill, Inc. v. Ron Bruge Trucking, Inc., 284 F.R.D. 421, 424 (D. Minn. 2012) ("[T]he same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34.").

The District served its interrogatories and requests for production on Counterclaimants by U.S. mail on May 22, 2024. (Seiler Decl. Ex. 1 [Docket No. 63-1]). Because service was effectuated by U.S. mail, Counterclaimants were required to timely reply with any answers or objections by June 24, 2024—thirty-three days after the date service was effectuated. However, Counterclaimants did not provide any reply at this point, but instead returned a brief email stating:

---

[16] When a party is required to act within a specified time after being served and service is effectuated via mail, three days are added to the period in which the party must act. See Fed. R. Civ. P. 6(d).

> Due to conflicts in my scheduling, including a family commitment, I am requesting an extension to provide answers to discovery to July 2, 2024. Thank you in advance for the courtesy.

(Seiler Decl. Ex. 2 [Docket No. 63-2]). The District did not stipulate to such an extension. Indeed, even by Counterclaimants' own self-imposed deadline of July 2, Counterclaimants still failed to provide any answers responsive to the District's written discovery requests due to "other commitments." Counterclaimants did not file a signed reply to the District's requests until July 17, 2024. (Seiler Decl. Ex. 6 [Docket No. 63-6]); see also COKeM International, Ltd. v. MSI Entertainment LLC, 2021 WL 6425377, at *2 (D. Minn. June 30, 2021) (failure to timely interpose objections resulted in "any objections that might have been made on any grounds other than privilege are waived.")

The Court understands that family commitments overtake an attorney's time, and the Court does not fault the Counterclaimants' attorney for her decision to focus on her family. However, an attorney still has an ethical obligation to the attorney's client to "act with reasonable diligence and promptness. Minn. R. of Prof. Conduct 1.3. The commentary to Rule 1.3 contemplates that observing the rule might mean that attorneys who are sole practitioners may need to put in place contingency plans in the event they cannot perform the work required in their cases. See Schmidt v. Univ. of Nw.-St. Paul, No. 23-CV-2199(JRT/JFD), 2024 WL 4707348 at *3 (D. Minn. Nov. 7, 2024).

Moreover, Rule 33, governing interrogatories, is unequivocal: "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); see Laughlin v. Stuart, No. 19-cv-2547 (ECT/TNL), 2020 U.S. Dist. LEXIS 103988, **11–14 (D. Minn. June 15, 2020); see also 8B Federal Practice & Procedure § 2173 ("In the absence of an extension of time, failure to object within the time fixed by the rule is a waiver of objections, as the rule now says.") (citations omitted); 7 Moore's Federal Practice - Civil §

33.174[2] ("Untimely objections normally are waived.") (citing Lohrenz v. Donnelly, 187 F.R.D. 1, 5 (D.D.C. 1999); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473–1477 (9th Cir. 1992) (additional citations omitted)). The District never expressly provided any "extension" to Counterclaimants. Instead, Counterclaimants' responses came after their counsel proposed several extensions throughout the course of discovery. See Davis v. Romney, 53 F.R.D. 247, 248 (E.D. Pa. 1971) (a party's "patience in agreeing to wait for answers beyond the [response] period cannot be considered as a stay or an extension of the time for filing objections") (citing Sturdevant v. Sears, Roebuck & Co., 32 F.R.D. 426 (W.D. Mo. 1963)); Haring v. Eckerd Corp, No. 1-cv-3988, 2002 U.S. Dist. LEXIS 11654, 2002 WL 32348343, at *1 (E.D. Pa. May 16, 2002) (finding waiver where it was not "entirely clear" that the agreed-upon extension encompassed both answers and objections to the discovery).

"[To] determine[] good cause, the Court should look into the circumstances behind the failure to object, whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance." Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, at *8 (M.D.N.C. 2001). The Court may also look at subsequent actions by the party to ascertain whether it was acting in good faith, as opposed to acting in a disinterested, obstructionist, or bad-faith manner. The Court should also take into account any resulting prejudice or lack thereof and the need to preserve the integrity of the rules by serving as a warning to other litigants. Finally, the Court may assess lesser remedies other than waiver should that be more appropriate.

However, because of the Court's inherent preference to resolve disputes regarding discovery on the merits, and given the lack of any prejudice to the District, the Court concludes that Counterclaimants have arguably shown good cause and will, therefore, address the substantive arguments concerning the written discovery requests that now remain in dispute.

## 2. Interrogatory No. 3

The District seeks an order from this Court compelling Counterclaimants to fully answer

Interrogatory No. 3:

> **INTERROGATORY NO. 3:** State your version of the facts giving rise to this lawsuit, identifying in detail and not in summary fashion, each act of each actor that you allege to be improper and/or a cause of a specific injury.
>
> **ANSWER:** Counter Claimants object to this interrogatory as overly broad. The facts have been developed in the administrative record and Complaint, as well as the answers set forth herein. *Dkt. 1, and 19-22.* See *Administrative Record.*
>
> **RESPONSE TO DEFICIENCY NOTICE**: Counter Claimants object to this interrogatory as overly broad. The facts have been developed in the administrative record and Counter Claimants' Complaint and Answer, as well as the answers set forth within the Answers to Interrogatories. See Answer to Interrogatory No. 4.

(Seiler Decl. Ex. 10 [Docket No. 64] at 2).

Before analyzing the sufficiency of the Counterclaimants' supplemental answer, the Court

will first analyze the sufficiency of the Counterclaimants' response to Interrogatory No. 4 as

several of their answers merely incorporate that response by reference. Interrogatory No. 4 asks

Counterclaimants to "[d]escribe the nature and extent of each and every physical, mental, and

emotional injury, whether temporary or permanent, I.R.M. and/or L.M. claim to have sustained as

the result of the alleged incidents set forth in the Counterclaim and Interrogatory No. 3."

(O'Sullivan Kane Decl. Ex. 1 [Docket No. 71] at 2). Counterclaimants' answer to Interrogatory

No. 4 consists of a six-page narrative statement summarizing Counterclaimants' version of all of

the facts in this case. (Id. at 2–7). This statement does not provide an accounting of the nature and

extent of Counterclaimants' alleged injuries but instead provides an argumentative narrative of

facts mostly unrelated to any injury. For example, the narrative describes how when L.M. was

serving as her son's service dog handler, "[o]ne paraprofessional discreetly slipped L.M. a note

stating, 'You matter.'" (Id. at 4). Perhaps most concerning is that the narrative response does not

provide any specific record citations to support the facts alleged in the answer outside of several generic "see Administrative Record" cites. At no point does the narrative answer to Interrogatory No. 4 attribute a fact alleged in the answer to any specific record, but instead it simply directs the reader to themselves attempt to find the source for the so-called "facts" in an Administrative Record spanning thousands of pages. Such a generic reference to the entirety of the Administrative Record is <u>not</u> appropriate. "'To answer an interrogatory, a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived.'" <u>Speed RMG Partners v. Arctic Cat Sales</u>, No. 20-cv-609 (NEB/LIB), 2021 WL 5087362, 2021 U.S. Dist. LEXIS 217006 at *15 (D. Minn. Jan. 5, 2021) (citing <u>Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.</u>, No. 9-cv-1091 (JNE/JSM), 2012 U.S. Dist. LEXIS 195781, 2012 WL 12894846, *10 (D. Minn. May 11, 2012)); <u>see also</u> <u>Pulsecard, Inc. v. Discover Card Servs.</u>, 168 F.R.D. 295, 305 (D. Kan. 1996) ("[Parties] may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents.").

Turning back to the supplemental Answer to Interrogatory No. 3, the Court finds that this answer, even with the incorporation of the narrative Answer to Interrogatory No. 4, does not "fully" answer the interrogatory as required by Federal Rule of Civil Procedure 33(b)(3). First, the Court finds that the request is not so broad that it would become overly burdensome for the Counterclaimants to identify the facts leading to this lawsuit, which they believe constitute wrongdoing by any agent of the District. However, the incorporation of Counterclaimants' Answer to Interrogatory No. 4 is nonresponsive to the interrogatory because not only does the answer to Interrogatory No. 4 improperly provide mere generic references to the Administrative Record as a

whole, but the answer also does not delineate the specific actors, their acts, nor any alleged specific resulting injuries as requested by Interrogatory No. 3. As a result, the reader can only speculate as to which portions of the narrative answer to Interrogatory No. 4 may constitute any specific acts by any specific individuals resulting in causing a specific injury.

In addition, the Counterclaimants' objection that the facts sought might be contained elsewhere in the litigation record such as their Complaint is unavailing. See, Smartmatic USA Corp. v. Lindell, 2023 WL 6890929, at *8 (D. Minn. Oct. 19, 2023).

Counterclaimants' objections to Interrogatory No. 3 are overruled, and they are required to provide a complete supplemental answer in accordance with Federal Rule of Civil Procedure 33(b)(3) and this Order.

### 3.  Interrogatory No. 12

The District seeks an order from this Court compelling Counterclaimants to fully answer Interrogatory No. 12. (See Plf.'s Memo. [Docket No. 62]):

> **INTERROGATORY NO. 12:** Describe in detail, and not in summary fashion, the factual basis for the allegation in Paragraph 17 of the Counterclaim that District special education staff "intentionally and deliberately interfered with I.R.M.'s access and use of [the service dog] in the public-school environment."

> **ANSWER:** Counter Claimants object to this interrogatory as it is duplicative of prior requests. See *Answer No. 4.*

> **RESPONSE TO DEFICIENCY NOTICE:** See Counter Claimants' Complaint and Answer Testimony of L.M. *trans. 15-160; 21 7-428; and 1133-1163; See Admin. Ex. Nos., inter alia, G-K; O-R; W; Z, AA, 3-5; 12-13; 15; 21-35; 45-48; 104-110; 113;117;120; 120-122.*

(Seiler Decl. Ex. 10 [Docket No. 64] at 3).

Here, the Court also finds that the Counterclaimants' supplemental answer is also insufficient under Federal Rule of Civil Procedure 33(b)(3). Responding to an interrogatory by citing hundreds of documents *en masse* without providing any specification to each document is

not a proper answer under Federal Rule of Civil Procedure 33(b)(3). <u>Speed RMG Partners</u>, No.

20-cv-609 (NEB/LIB), 2021 WL 5087362, 2021 U.S. Dist. LEXIS 217006 at *15 (citing

<u>Schwendimann v. Arkwright Advanced Coating, Inc.</u>, No. 11-820 (ADM/JSM), 2015 U.S. Dist.

LEXIS 192154, 2015 WL 12781248, at *5 (D. Minn. Oct. 14, 2015)).[17] Furthermore, a citation to

the Counterclaimants' Complaint is not appropriate either as it "does not provide Defendant[] with

any discovery information." <u>Smartmatic USA Corp.</u>, 2023 WL 6890929, at *8.[18]

Counterclaimants' objections to Interrogatory No. 12 are overruled, and they are required

to provide a complete supplemental answer in accordance with Federal Rule of Civil Procedure

33(b)(3) and this Order.

### 4. Interrogatory No. 18

The District seeks an order from this Court compelling a full answer to Interrogatory No.

18, which asks Counterclaimants to identify specific acts claimed to constitute discrimination:

> **INTERROGATORY NO. 18:** Describe in detail, and not in summary fashion, each and every act by any current or former District representative that you claim to be discrimination against you.

> **ANSWER:** Counter Claimants object to this interrogatory as it is duplicative of prior requests. See *Answer No. 4.*

> **RESPONSE TO DEFICIENCY NOTICE:** See *Counter Claimant's Complaint and Answer; Answer to Interrogatories; Response to Deficiencies*; and Admin.

---

[17] The Court also notes that Federal Rule of Civil Procedure 33(d)(1) may allow a party answering an Interrogatory to refer to a <u>business record</u> provided that the parties would have equal burdens ascertaining the requested answer from those records. The party invoking the business record rule under 33(d) must "specify[] the records that must be reviewed[] in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Even assuming that Counterclaims can satisfy their obligations under 33(b)(3) by treating the Administrative Record as analogous to a "Business Record," the Counterclaimants must still delineate how each record cited is responsive to the discovery request. <u>Speed RMG Partners</u>, No. 20-cv-609 (NEB/LIB), 2021 WL 5087362, 2021 U.S. Dist. LEXIS 217006 at *15 ("simply referring the interrogating party generally to large numbers of documents does not satisfy a party's obligations under Rule 33(d).").

[18] Furthermore, the Counterclaimants' response to Interrogatory No. 12 is per se incomplete as the string citation response contains the introductory signal "inter alta," which typically is understood to mean "among others." This suggests that there are other references responsive to Interrogatory No. 12 that were <u>not</u> disclosed. Such a practice is inconsistent with the requirement that a party "fully" answer the interrogatory as required by Federal Rule of Civil Procedure 33(b)(3).

record and testimony.

(Seiler Decl. Ex. 10 [Docket No. 64] at 3–4).

Here, Counterclaimants object on the grounds that Interrogatory No. 18 is duplicative of other requests. The interrogatory specifically asks for an accounting of acts that constitute discrimination by the District against Counterclaimants. While other Interrogatories may ask for listings of similar events, such as instances where the district interfered with I.R.M.'s use of his service dog (Interrogatory No. 12) and actions by the District that constituted retaliation (Interrogatory No. 21), Interrogatory No. 18 is the <u>only</u> interrogatory that specifically asks Counterclaimants to list the acts which constitute disability discrimination.

Additionally, Counterclaimants improperly cite their Complaint and Answer, <u>Smartmatic USA Corp.</u>, 2023 WL 6890929, at *8, and the entirety of the Administrative Record, <u>Speed RMG Partners</u>, No. 20-cv-609 (NEB/LIB), 2021 WL 5087362, 2021 U.S. Dist. LEXIS 217006 at *15, as the basis for their response. Such practices are <u>not</u> consistent with the requirements of the Federal Rule of Civil Procedure. In addition, as already addressed above, the narrative response of Interrogatory No. 4 does not delineate between acts that Counterclaimants claim constitute disability discrimination and other acts that are unrelated to the discrimination claim. For example, there are multiple facts in the Interrogatory No. 4 narrative response that could not possibly constitute discrimination such as: the description of how L.M.'s youngest child, not named in the above-captioned action, began to "act out" when L.M. became occupied with the dispute over the service dog with the District, (O'Sullivan Kane Decl. Ex. 1 [Docket No. 71] at 4), or how during the course of the ongoing dispute, L.M. began taking medication to treat heartburn. (<u>Id.</u>). The nature of the Interrogatory No. 4 narrative response requires the reader to try to speculate as to which particular "facts" therein are responsive to Interrogatory No. 18 and which might be irrelevant.

Counterclaimants' objections to Interrogatory No. 18 are overruled, and they are required to provide a complete supplemental answer in accordance with Federal Rule of Civil Procedure 33(b)(3) and this Order.

### 5. Interrogatory No. 21

Interrogatory No. 21 asks Counterclaimants to list all instances that constituted retaliation under Title V of the ADA. The District seeks an order from this Court compelling a full response:

> **INTERROGATORY NO. 21:** Describe in detail, and not in summary fashion, each and every act by any current or former District representative that you claim constitutes retaliation in violation of Title V of the ADA, 42 U.S.C. § 12203(a).
>
> **ANSWER:** Counter Claimants object to this interrogatory as it is duplicative of prior requests. See *Answer No. 4*.

(Seiler Decl. Ex. 10 [Docket No. 64] at 4).

As the Court found in its analysis of Interrogatory No. 18 (requesting a listing of acts constituting disability discrimination), Counterclaimants' objection that Interrogatory No. 21 is duplicative of prior requests is here too unavailing. Interrogatory No. 21 specifically asks for information regarding retaliation, which is distinct from all other written discovery requests served on Counterclaimants.

In addition, for the same reasons stated above, the mere incorporation by reference of the entirety of the Counterclaimants' narrative answer to Interrogatory No. 4 raises concerns. While the Court notes that the narrative response to Interrogatory No. 4 is broken into a subsection titled "Retaliation," (O'Sullivan Kane Decl. Ex. 1 [Docket No. 71] at 5), the "Retaliation" section of the narrative response, however, also principally contains generic references to the Administrative Record as a whole. (Id. at 6). As the Court has already found, such generic references incorporated into an answer are inappropriate, as referring the opposing party to a large number of documents without delineating what specifically within the group of documents is responsive to the discovery

request does not satisfy the requirements of Rule 33. See Speed RMG Partners, No. 20-cv-609 (NEB/LIB), 2021 WL 5087362, 2021 U.S. Dist. LEXIS 217006 at *15. Counterclaimants instead must fully answer the interrogatory by providing specific references to the underlying sources of information upon which they rely for their response.

Counterclaimants' objections to Interrogatory No. 21 are overruled, and they are required to provide a complete supplemental answer in accordance with Federal Rule of Civil Procedure 33(b)(3) and this Order.

### 6. Request for Production No. 9

The District also seeks an order from this Court requiring Counterclaimants to supplement their answer to its Request for Production No. 9. Specifically, the District believes that Counterclaimants have yet to fully account for the documents upon which they base their claim for compensatory and other monetary damages.  Document request No. 9 and Counterclaimants' response is reproduced below.

> **DOCUMENT REQUEST NO. 9:** All documents upon which you base your claims of damages, including itemized statements of any costs incurred.
>
> **RESPONSE**: See administrative record and Response No. 5. [19]

(Seiler Decl. Ex. 10 [Docket No. 64] at 4–5).

The District asserts Counterclaimants' answer to Interrogatory No. 7 includes an extensive list of Counterclaimants' alleged monetary damages of which ordinarily there would be documentation, including: attorney fees and costs related to the administrative hearing; tuition fees and payments for Counterclaimant L.M.'s daughter to attend preschool;[20] attorney fees and costs

---

[19] The reference to Response No. 5 refers to notes from one medical appointment for I.R.M. and two medical appointments for L.M. Specifically, there are no documents identifying any monetary costs incurred for these medical visits. There is no further Response to the July 26, 2024, deficiency letter.

[20] Such tuition fees for L.M.'s daughter appear to have been given in a supplemental disclosure. (See O'Sullivan Kane Decl. Ex. 2 [Docket No. 71]).

incurred prior to the administrative hearing; the calculation of L.M.'s "wages" totaling $13,000; and attorney fees and costs for the ADA claims. (Seiler Decl. Ex. 6 [Docket No. 64] at 13–14; <u>see also</u> Plf.'s Memo. [Docket No. 62]). However, Counterclaimants have not produced any such documentation of damages outside of notes from only one medical appointment for I.R.M. and two medical appointments for L.M., (<u>see</u> Response No. 5), as well as, what appears to be a "tuition payment" made for L.M.'s second child submitted among Counterclaimants Declaration in opposition to the Motion to Compel. (<u>See</u> O'Sullivan Kane Decl. Ex. 2 [Docket No. 71-1]).

The Court notes that pursuant to Rule 26(a)(1)(A)(iii), Counterclaimants should have provided any documents upon which they base their claims for damages at the outset of this litigation as part of their initial disclosures. <u>See</u>, Fed. Rule Civ. P. 26(a)(1)(A)(iii) (stating that, at the outset of litigation, parties must disclose "a computation of each category of damages claimed" and "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."). Indeed, this Court's own Scheduling Order, [Docket No. 50], established a deadline of January 15, 2024, for Rule 26(a) initial disclosures.

Counterclaimants shall provide all documents upon which they base any of their claims for monetary damages and that are responsive to Document Request No. 9 within 21 days of this Order. If Counterclaimants fail to produce such responsive documents to the District within 21 days, Counterclaimants shall be prohibited from introducing such undisclosed items and documents supporting their computation of monetary damages at trial.

## C. The District's Request to Reopen Discovery to Re-Depose Counterclaimant

Finally, the District further requests an order from this Court modifying the current

operative Scheduling Order to permit a second deposition of L.M. regarding the forthcoming supplemental answers. (Plf.'s Memo. [Docket No. 62] at 17). The Court notes that discovery ended on February 15, 2025. [Docket No. 50; Docket No. 59].

Rule 16(b) governs the Court's modification of pretrial scheduling orders. Fed. R. Civ. P. 16(b). The Rule provides that the "schedule may be modified only for good cause and with the judge's consent." Id. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008) (quoting Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006)); see Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "The 'good cause' standard requires a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." Burris v. Versa Products, Inc., No. 7-cv-3938 (JRT/JJK), 2009 U.S. Dist. LEXIS 90153, 2009 WL 3164783, at *4 (D. Minn. Sept. 29, 2009); see Harris v. Chipotle Mexican Grill, Inc., No. 13-cv-1719 (SRN/SER), 2016 U.S. Dist. LEXIS 142328, 2016 WL 5952734, at *3 (D. Minn. Oct. 13, 2016) (citing Sherman, 532 F.3d at 715). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. [The Eighth Circuit Court of Appeals'] cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." Sherman, 532 F.3d at 717.

Here as already noted, the operative Scheduling Order, filed on September 18, 2024, required that all discovery be undertaken before February 15, 2025. Counterclaimant L.M. was

deposed by Plaintiff on December 13, 2024. (Def.'s Memo. [Docket No. 62] at 4 n. 2). This deposition occurred over four months <u>after</u> the District served on Counterclaimants its July 26, 2024, deficiency letter and over three months <u>after</u> the District received Counterclaimants September 3rd supplemental response to the July 26 deficiency letter. As evident by the District's second deficiency letter of January 3, 2025, the District clearly did not consider the September 3rd supplemental response sufficient either.

Nonetheless, the District made a strategic decision to depose L.M. on December 13, 2024 <u>before</u> notifying Counterclaimants of the perceived continuing deficiencies in their responses in the January 3, 2025, deficiency letter. Indeed, the District only decided to engage in seeking supplemental answers on Counterclaimants' September 3rd response four months after it was received. The District did not seek to re-depose L.M. until it filed its Motion to Compel, [Docket No. 60], on January 28, 2025. However, at this point the deadline to conduct discovery (except for completion of an expert deposition) had already passed.

In similar contexts, Courts in the Eighth Circuit have routinely found a party to lack the requisite diligence to establish the exacting standard of "good cause" when a party's intentional litigation strategy is responsible for said party's failure to comply with a Court-ordered deadline. <u>See</u> <u>Scheidecker v. Arvig Enters.</u>, 193 F.R.D. 630, 632 (D. Minn. 2000). The District has had ample time to seek an order compelling supplemental written discovery answers and production from Counterclaimants regarding their September 3rd response to the District's discovery requests. Likewise, had the District more promptly brought its motion to compel written discovery now before the Court, it could have sought the first deposition of L.M. after receiving a ruling on a more prompt motion to compel. Instead, the District simply seeks leave to reconvene L.M.'s deposition regarding any additional discovery which it may receive now as a result of this Court's

ruling on its Motion to Compel when it chose to depose L.M. earlier believing that Counterclaimant's written discovery responses were insufficient yet deciding not to bring a motion to compel more substantial written discovery prior to noticing and taking L.M.'s deposition.

Based on this record, the Court finds that the District has failed to show "good cause" as to why the current operative Scheduling Order should be modified to allow for a second deposition of L.M. The District made the tactical decision to depose L.M. <u>before</u> seeking to compel further answers to her September 3rd supplemental responses and the District did not attempt to seek to re-depose until filing the present Motion to Compel <u>after</u> the discovery deadline had passed.

Accordingly, insofar as the District seeks an order to reopen discovery for the purpose of a second deposition of L.M., Plaintiff's motion is **DENIED**.

## IV.    ANALYSIS OF PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER. [DOCKET NO. 77].

The District seeks an order from this Court amending the current operative Second Amended Pretrial Scheduling Order, ([Docket No. 50]), to suspend the dispositive motion deadline *sine die* until the Court decides on the parties' cross-motions for Judgment on the Administrative Record and until Counterclaimants have had an opportunity to comply with any Orders from this Court requiring supplemental answers to pending written discovery requests. (<u>See</u> <u>generally</u> Plf.'s Memo. [Docket No. 79]). Counterclaimants oppose this motion on the grounds that they believe the District's Motion to Amend the Scheduling Order implicitly seeks to reconvene L.M.'s deposition.

As a preliminary matter, the Court finds no such request to reconvene L.M.'s deposition within the four-corners of the District's current Motion to amended the pretrial schedule. (<u>Id.</u>). It appears that during the parties email exchanges regarding the District's Motion to Compel and Motion to Amend the Scheduling Order, the District offered to stipulate and withdraw its Motion

to Compel in exchange for conducting a limited deposition of L.M. (O'Sullivan Kane Decl. Ex. 3 [Docket No. 84-3] (February 28, 2025, Letter from the District's counsel offering to stipulate as to the sufficiency of written discovery answers in exchange for a deposition of L.M.)). Counterclaimants' counsel then filed briefing arguing why L.M. should not be required to be re-deposed and why its ADA claims are not estopped by the Individuals with Disabilities Education Act. (See generally Def.'s Memo. [Docket No. 83]).[21]

None of these arguments made by Counterclaimants are germane to the Court's analysis of whether "good cause" exists under Federal Rule of Civil Procedure 16(b)(4) to modify the Second Amended Pretrial Scheduling Order. ([Docket No. 50]). In the present record, cross motions for Judgment on the Pleadings have been filed by the District and Defendant on May 15 and May 28, 2024, respectively. ([Docket Nos. 23, 30]). In addition, the Counterclaimants will require time to provide supplemental responses to the written discovery items which the Court has identified as deficient in its analysis *supra*.[22] Given this context, and given the Court's inherent authority to manage litigation pending before it, the Court finds that good cause exists to modify the current operative Scheduling Order for the limited purpose of extending the dispositive motion deadline and the trial ready deadlines.

Accordingly, the District's Motion to Amend Scheduling Order, [Docket No. 77], is **GRANTED** in part and **DENIED** in part.

## V.    CONCLUSION.

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

---

[21] Even assuming for the sake of argument that the District's Motion to Amend the Scheduling Order requested leave to re-depose L.M. such a request would be moot as the Court has previously in this Order found that "good cause" does not exist to amend the scheduling order for the separate, limited purpose of allowing a second deposition of L.M.
[22] The Court requires that Counterclaimants  serve upon Plaintiff supplemental answers and responses to Interrogatory Nos. 3, 12, 18, and 21 and Request for Production No. 9 within 21 days of this Order.

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel Discovery, [Docket No. 60], is **GRANTED** in part and **DENIED** in part as set forth herein, and Counterclaimants shall serve upon Plaintiff supplemental answers and responses to Interrogatory Nos. 3, 12, 18, and 21 and Request for Production No. 9 within 21 days of this Order;[23] and

2. Plaintiff's Motion to Amend Scheduling Order, [Docket No. 77], is **GRANTED** in part and **DENIED** in part.[24]

Date: March 27, 2025                            /s/Leo I Brisbois
                                                Hon. Leo I. Brisbois
                                                U.S. MAGISTRATE JUDGE

---

[23] The Court reminds Counterclaimants that pursuant to Federal Rule of Civil Procedure 33(b)(5), all answers to interrogatories must be signed by the party who makes them.

[24] A Third Amended Pretrial Scheduling Order will be issued separately by the undersigned U.S. Magistrate Judge.